UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SPB, NH, and JHB, individuals,<br><br>        Plaintiffs,<br> v.<br>WASHOE COUNTY SCHOOL DISTRICT,<br><br>        Defendant. | Case No. 3:22-cv-00340-ART-CLB<br><br>ORDER AWARDING REIMBURSEMENT |

  Plaintiffs SPB, NH, and JHB sued Defendant Washoe County School District for violations of JHB's rights under the Individuals with Disabilities Education Act ("IDEA"). The Court previously granted Plaintiffs partial summary judgment, finding that the District violated its child find obligation and denied JHB a free appropriate public education ("FAPE") under the IDEA. (ECF No. 57.) The Court ordered supplemental briefing on the appropriate remedy for the District's violation and heard oral argument on that issue on May 7, 2025. (ECF No. 86.) Pending before the Court is Plaintiffs' motion for reimbursement (ECF No. 80) and several related motions (ECF Nos. 53, 59, 67, 68, 73).

  For the following reasons, the Court grants in part Plaintiffs' motion for reimbursement (ECF No. 80) and awards Plaintiffs reimbursement in the sum of $198,833.21 for the District's FAPE violation.

**I. DISCUSSION**

  Because the Court's prior order on liability (ECF No. 57) summarized the facts of this case and because the parties are familiar with those facts, the Court discusses facts below only as relevant to each issue.

  The Court heard oral argument on the motions addressed in this order on May 7, 2025. Parties first discussed motions related to the issue of whether

1

1  Plaintiffs may seek reimbursement for the costs of Arise, a remedy which they
2  had previously waived. (ECF Nos. 53, 67, 73.) Parties then discussed the
3  supplemental briefing that the Court had requested on the issue of remedies more
4  generally. (ECF No. 80.) The Court addresses each in turn.

**A. Waiver**

The Court first addresses the issue of whether Plaintiffs can seek reimbursement for the costs of JHB's enrollment at the Arise society, a Utah-based transitional program. JHB was enrolled at Arise from October 2021 until her graduation in January 2024. (ECF No. 80 at 1.)

Plaintiffs filed their due process complaint against the District in February 2021. (AR 898–903.) In October 2021, JHB enrolled at Arise. (AR 2607.) One month later, in November 2021, an administrative hearing was held. (AR 1–828.) In March 2022, the Hearing Officer ("HO") found that the District was not liable. (AR 1283–1308.) In May 2022, the State Review Officer ("SRO") reversed that decision, finding that the District violated its child find duty and ordering compensatory education as a remedy. (AR 3488–91.) Plaintiffs filed the complaint in this case in July 2022, appealing the SRO's decision and seeking reimbursement rather than compensatory education. (ECF No. 1 at 12.) Throughout the course of litigation before this Court, Plaintiffs made clear that they were not seeking reimbursement for the costs of Arise. (ECF Nos. 13, 31, 32.)

Plaintiffs first sought reimbursement for Arise in July 2024 in an "errata," two years after filing their complaint and eight months after filing motions for judgment in this case (ECF No. 47). They refiled that motion as a request for leave to file a motion to reinstate waived damages in September 2024 (ECF No. 53). After the Court's prior order, which deferred ruling on this issue (ECF No. 57), Plaintiffs filed a motion requesting leave to supplement the administrative record

with documents related to Arise (ECF No. 67). Defendants moved to strike that motion, arguing that the motion was an improper third attempt to address an issue which the Court previously deferred ruling on (ECF No. 73).

### 1. Plaintiffs Waived the Remedy of Reimbursement for Arise

Parties agree that Plaintiffs waived the issue of reimbursement for Arise, but dispute whether any exception to that waiver applies. Plaintiffs argue that the Court should exercise its discretion to reach an otherwise waived issue because their claim for reimbursement for Arise is meritorious under the IDEA and because an exception to waiver applies. (ECF No. 53.) The District argues that leave should be denied as futile because no exception to overcome the waiver applies and that Plaintiffs should be judicially estopped from adding Arise as a new remedy at this point in the litigation. (ECF No. 55.) Because the Court finds that no exception to waiver applies, it need not reach the issue of judicial estoppel.

"A waiver occurs when 'a party intentionally relinquishes a right' or 'when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'" *Salyers v. Metropolitan Life Insurance Company*, 871 F.3d 934, 938 (9th Cir. 2017) (citing *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991). "[A]n appellant's failure to argue an issue in the opening brief, much less on appeal more generally, waives that issue," with certain exceptions. *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1152 (9th Cir. 2018).

Here, Plaintiffs repeatedly stated that they would not be seeking reimbursement for Arise throughout the course of litigation before this Court. In October 2022, Plaintiffs stated in their joint case management report that they did not anticipate discovery would be needed and that "[t]he relevant evidence is

3

contained in the administrative record." (ECF No. 13 at 6.) In September 2023, Plaintiffs filed two motions for judgment, one focused on liability and the other on remedies. (ECF Nos. 31, 32.) In the first, they requested reimbursement for several placements (as detailed below), but not for Arise. (ECF No. 31.) In the second, they expressly stated that they were "not pursuing reimbursement for Arise." (ECF No. 32 at 28.) These statements constitute a clear waiver.

### 2. Plaintiffs Failed to Demonstrate Good Cause to Supplement and no Exception to Waiver Applies

"A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." LR 7-2(g). In their motion, Plaintiffs argue that good cause exists because an exception to the waiver should apply. (ECF No. 53 at 7–8.) They do not address their eight-month delay in bringing this request or argue that they were reasonably diligent in bringing this motion. (*See id.*)

Plaintiffs point to *In re Mercury Interactive Corp. Securities Litigation* for the Ninth Circuit's "general rule" against entertaining arguments on appeal that were not presented or developed before the lower court. 618 F.3d 988, 992 (9th Cir. 2010). In that case, the Ninth Circuit explained that courts may exercise discretion to reach waived issues only in three circumstances: (1) "'in the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process,'" (2) "'when a new issue arises while appeal is pending because of a change in the law,'" and (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citing *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

The District argues that *In re Mercury* is inapplicable because that case involved a waiver on appeal for failure to present the issue to the lower district court, whereas this case involves an express waiver of a remedy in briefing before

4

the reviewing court. (ECF No. 55 at 17.) But even under *In re Mercury*, Plaintiffs have failed to show that an exception to the waiver should apply.

Plaintiffs argue that this is an exceptional case because they mistakenly waived their claim to reimbursement, because the services provided by Arise are needed to support JHB's disability, and because the services were expensive. (ECF No. 53 at 8.) Plaintiffs do not cite to any case law suggesting that these kinds of circumstances are "exceptional," and the Court does not find that they are.

Plaintiffs next argue that the Supreme Court's decision in *Loper Bright Enterprise v. Raimondo*, 603 U.S. 369 (2024), which overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984), constitutes a change in law relevant to this motion because "Plaintiffs were confused by the U.S. Department of Education's position regarding transition services post-GED." (ECF No. 53 at 8.) In prior briefing, Plaintiffs explained that they withdrew their request for Arise based on the Department of Education's "ambiguous" interpretation of 34 C.F.R. § 300.102(a)(3). (ECF No. 31 at 7.) But they made no reference to *Chevron* in that briefing, nor do they explain why the issue of reimbursement for Arise is a "new issue" which has arisen because of *Loper Bright*.

Finally, Plaintiffs argue that the factual record supporting their claim for Arise was fully developed at the administrative hearing and that "no discovery was foregone by the District in reliance upon Plaintiffs' waiver." (ECF No. 53 at 8–9.) As evidenced by Plaintiffs' request to supplement the administrative record to support their claim for Arise (ECF No. 67), the factual record supporting this claim was not fully developed at the administrative hearing, which took place just one month after JHB enrolled at Arise.

Therefore, even under the framework that Plaintiffs present, the Court finds

5

no justification to reach the waived issue of reimbursement for Arise. The Court denies Plaintiffs' motion to file a motion to reinstate waived damages (ECF No. 53). The Court denies as moot Plaintiffs' motion to supplement the record (ECF No. 67) and Defendant's motion to strike (ECF No. 73).

### B. Motion for Reimbursement

Plaintiffs seek reimbursement for expenses related to: (1) Brigham Young University ("BYU") online courses; (2) the Menninger Clinic's diagnosis and evaluation of JHB; (3) Academic Answers, the educational consultant retained to locate placements for JHB; and (4) Elevations RTC, a residential treatment facility in Utah. (ECF No. 80.)[1]

Under the IDEA, a free appropriate public education includes a "special education" and "related services." 20 U.S.C. § 1401(9). "Special education" is defined to include "instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings." 20 U.S.C. § 1401(29). "Related services" are defined to include, as relevant here, "transportation, and such developmental, corrective, and other supportive services (including . . . psychological services, physical and occupational therapy, recreation . . . and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(17).

Once a court holds that a district violated IDEA, the court has broad discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Under this provision, "equitable considerations are relevant in fashioning relief." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359, 374 (1985). "Courts fashioning discretionary relief under

---

[1] The Court does not consider Plaintiffs' request for reimbursement for Arise because Plaintiffs waived that request.

1  IDEA must consider all relevant factors, including the appropriate and reasonable
2  level of reimbursement that should be required." *Florence Cnty. Sch. Dist. Four v.*
3  *Carter By & Through Carter*, 510 U.S. 7, 15–16 (1993).

4  Parents who unilaterally change their child's placement are entitled to
5  reimbursement if the private school placement was "proper under the Act." *Id.* at
6  15. To show that a placement was "proper," "parents need not show that a private
7  placement furnishes every special service necessary to maximize their child's
8  potential. They need only demonstrate that the placement provides educational
9  instruction specially designed to meet the unique needs of a handicapped child,
10 supported by such services as are necessary to permit the child to benefit from
11 instruction." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d
12 1155, 1159 (9th Cir. 2011).

### 1. BYU Online Courses

14 Plaintiffs argue that reimbursement for BYU tuition is appropriate because
15 the placement conferred upon JHB an educational benefit which she otherwise
16 would not have received. (ECF No. 80 at 2.) The District argues that "specialized
17 instruction" is required for reimbursement, citing *C.B.*, 635 F.3d 1155, and
18 therefore that BYU tuition is not reimbursable. (ECF No. 81 at 6.) In *C.B.*, the
19 Ninth Circuit emphasized that a private school need not provide "every special
20 service necessary to maximize [a student's] potential" to qualify as "proper" and
21 explained that "equity does not require a reduction in reimbursement just
22 because a parent or guardian cannot afford to give the child everything (or cannot
23 find a program that does)." 635 F.3d at 1159. That case did not, as the District
24 argues, hold that a placement must provide "specialized instruction" to be
25 reimbursable.

26 As outlined in the Court's previous order, Parents enrolled JHB at BYU at
27 the suggestion of the District in March 2019. (*See* ECF No. 57 at 4–5, 31–32.)

7

1   These online courses allowed JHB to continue making academic progress while
2   receiving psychiatric treatment elsewhere. (*Id.* at 5.) The online courses may not
3   have provided individualized instruction, but as the court explained in *C.B.*, it
4   would create perverse financial incentives to refuse reimbursement for a program
5   that provides for only some of the student's special needs but grant
6   reimbursement for a—much more expensive—program that meets every possible
7   need. 635 F.3d at 1160.
8          Consideration of the equities counsels in favor of granting reimbursement.
9   Galena's counselor, Marisa Dunne, raised the possibility of earning credits from
10  BYU with the Parents, explaining that the District honors those credits. (ECF No.
11  57 at 5.) Parents and the District discussed the possibility of homeschooling and
12  provided the school with notice that JHB would complete grade nine with BYU
13  online courses. (*Id.*) The District both suggested and was on notice of this
14  placement.
15         The Court therefore finds that the BYU placement was proper under the
16  Act and awards Plaintiffs reimbursement in the amount of **$701.00.** (*See* ECF
17  No. 82 at 3; ECF No. 41 at 30 n.21.)
18              **2. Menninger Clinic**
19         Plaintiffs argue that they are entitled to reimbursement for the cost of JHB's
20  six-week long "comprehensive inpatient evaluation" at the Menninger Clinic. (ECF
21  No. 80 at 2; AR 1658–68, 2490–95.) Plaintiffs argue that these costs are
22  reimbursable as "related services" under 20 U.S.C. § 1401(9) because they were
23  for diagnostic and evaluation purposes. (ECF No. 80 at 2.) The District argues
24  that the Menninger Clinic was primarily medical, rather than educational, relying
25  on *Clovis Unified Sch. Dist. v. California Off. of Admin. Hearings*, 903 F.2d 635
26  (9th Cir. 1990), and therefore cannot be reimbursed. (ECF No. 81 at 8–13.)
27  Plaintiffs argue that *Department of Education v. Cari Rae S.* is more applicable to
28

8

the facts of this case. 158 F. Supp.2d 1190 (D. Hawaii 2001). The Court agrees that reimbursement is appropriate but reduces the amount of reimbursement for equitable reasons.

In *Clovis,* the Ninth Circuit held that a student's hospitalization was not a "related service" under the Act because she was hospitalized "for medical, rather than educational purposes." 903 F.2d at 638. The student in that case had been admitted to an acute care psychiatric hospital after her "behavior had deteriorated to such an extent" that staff at a mental health residential treatment program "could no longer control her." *Id.* The court found that the hospital's services were excludable medical services because the student was hospitalized primarily for medical reasons, because those services, which included "six hours per day of intensive psychotherapy," were focused upon treating an underlying medical crisis, and because the hospital did not provide educational services. *Id.* at 645–47. The court did not consider whether any portion of the student's hospitalization was for "diagnostic and evaluation purposes." *See id.*

In *Cari Rae*, a case which, like this one, involved a child find violation, the court held that costs incurred for a student's treatment, diagnosis, and evaluation at a hospital were "related services" under the Act. 158 F. Supp. 2d at 1191. The six-day hospitalization was precipitated by an acute crisis, but the costs of the hospitalization "were also a significant part of the [s]tudent's diagnosis and evaluation as disabled with an emotional impairment." *Id.* at 1198. The facts were distinguishable from *Clovis* because *Clovis* did not involve a child find violation and did not involve costs for "diagnosis and evaluation." *Id.* In finding that the costs were reimbursable, the court reasoned that "[i]f not for the crisis, [the student's] disability might never have been treated and she might never have received IDEA services." *Id.*

The facts here are analogous to those in *Cari Rae*: this is a child find case,

9

JHB was hospitalized following an acute crisis, and JHB received diagnostic and evaluation services while hospitalized. The Menninger Clinic provided a "Diagnostic Feedback Summary & Recommendations" based on JHB's "comprehensive inpatient evaluation." (AR 1658–68.) The report includes a diagnostic section which notes that JHB met criteria for diagnosis of Post-Traumatic Stress Disorder, Major Depressive Disorder, Generalized Anxiety Disorder, and Social Anxiety Disorder. (AR 1662–65.) The report includes treatment recommendations and provides several referrals and resources, including the educational consultant that Parents ultimately chose, Academic Answers. (AR 1665–67.)

However, the facts here differ significantly in time and cost: the student in *Cari Rae* was hospitalized for six days, resulting in costs totaling $8,000. 158 F. Supp. 2d at 1191, 1200. Here, JHB was hospitalized for six weeks, resulting in costs totaling $79,240.00. (ECF No. 82-2 at 6; AR 2495.) According to the account statement, JHB received diagnostic evaluations on only six days out of that six-week period. (AR 2490–95.) JHB received a "Psych Diagnostic Eval" on August 7, August 10, August 14, August 20, and August 26, 2020, and two "Psych testing evaluation[s]" on the day of her discharge, September 21, 2020. (*Id.*) However, many of the items listed on the account statement are for services which do not appear related to diagnostic and evaluation services, including crisis psychotherapy, family therapy, group therapy, and observation. (AR 2490–95.) The largest single cost was "room/bed," billed at $1,350 per night. (*Id.*)

The Supreme Court in *Florence County* counseled courts to consider the reasonableness of costs in granting relief. 510 U.S. at 16. The Court finds that reimbursement for the days on which JHB received diagnostic and evaluation services is reasonable. The Court therefore awards Plaintiffs partial

10

reimbursement in the amount of **$14,675.00**.[2] The Court does not award Plaintiffs the requested reimbursement for transportation from the Sutter Clinic to the Menninger Clinic. (ECF No. 82-2 at 2.)

### 3. Academic Answers

Plaintiffs argue that their costs for retaining an educational consultant through Academic Answers should be reimbursed as a cost of enrollment for Elevations and Arise or as a related service. (ECF No. 80 at 3.) The District makes the same arguments that the Court has already rejected regarding the need to provide specialized instruction and does not cite any case law on point suggesting that such fees should not be reimbursed. (*See* ECF No. 81 at 6.) Plaintiffs point to *Lamoine School Committee v. Ms. Z. ex rel. N.S.*, where the court found reimbursed fees for an educational consultant as a "cost of enrollment, particularly in view of [the court's] conclusion that the [district] had effectively assigned this responsibility to [the parent]." 353 F. Supp. 2d 18, 43 (D. Me. 2005).

Here, too, the District effectively assigned responsibility of finding an appropriate placement to the school when it violated its child find obligation in February 2019. Parents retained Academic Answers to find a proper educational placement for JHB in September 2020, upon recommendation of the Menninger Clinic. (ECF No. 57 at 6–7.) As explained below, the Court finds that the recommended placement at Elevations was appropriate.

The Court therefore awards Plaintiffs reimbursement for Academic Answers consulting fees in the amount of **$7,300.00**. (AR 2501–04; ECF No. 82-2 at 2.)

### 4. Elevations RTC

Plaintiffs request reimbursement for the costs of Elevations, arguing that

---

[2] This figure represents the total of costs billed for each of the six days JHB received diagnostic evaluations: August 7, August 10, August 14, August 20, August 26, and September 21, 2020. (*See* AR 2490–95.)

11

it was an appropriate placement that provided JHB significant educational benefits. (ECF No. 80 at 3–12.) The District argues that Elevations should not be reimbursed because it was predominantly medical rather than educational, relying on *Clovis*, 903 F.2d 635, *Ashland School District v. Parents of Student R.J.*, 588 F.3d 1004 (9th Cir. 2009), and *Forest Grove Sch. Dist. v. T.A.*, 638 F.3d 1234, 1239 (9th Cir. 2011).[3] (ECF No. 81 at 5–13.) Plaintiffs argue that *Clovis* and *Ashland* are distinguishable, and that two other Ninth Circuit cases, *Taylor By & Through Taylor v. Honig*, 910 F.2d 627, 632 (9th Cir. 1990), and *Edmonds School District v. A.T.*, 780 F. App'x 491 (9th Cir. 2019), are more instructive and analogous to the facts of this case. The Court agrees and finds that reimbursement is appropriate.

*Clovis* and *Taylor* instruct courts to distinguish residential facilities from medical facilities. As explained above, the court in *Clovis* considered the issue of whether the student's hospitalization could be considered a "residential placement" or "related service" under the Act. 903 F.3d at 638–39. In that case, there was no dispute that the district was responsible for paying for the residential treatment program; the parties only disagreed as to whether the district was responsible for paying for the costs of the hospitalization. *Id.* at 639. In *Taylor*, the Ninth Circuit considered whether IDEA required the school district to pay for a student's placement at a residential facility that operated as a full-time school. 910 F.2d at 632. The court explained that "[i]n *Clovis* we distinguished residential facilities, like the one at bar which provide training and education, from institutions like the hospital at issue in *Clovis*, which serve primarily as medical facilities and are not recognized by the state as educational placements." *Id.* The court affirmed a preliminary injunction requiring that the

---

[3] The District also argues that Elevations did not provide individualized instruction. The Court previously addressed and rejected this argument.

12

district be primarily liable for the costs of a student's placement at a treatment center which operated "in a dual capacity as a school and as a psychiatric hospital." *Id.* at 628. The facts of *Taylor* were distinguishable from *Clovis* because the facility operated a full-time, accredited school, the student was "medically stable," and the placement was primarily for educational reasons. *Id.* at 632. There is no suggestion here that Elevations is a medical facility, rather than a residential placement.

The other cases that the District relies upon are distinguishable. In *Forest Grove*, the Ninth Circuit affirmed the denial of reimbursement for a private boarding school where the district court determined that the student's parents enrolled him at the school "not because of any disability recognized by the IDEA but because of his drug abuse and behavioral problems." *Forest Grove Sch. Dist. v. T.A.*, 675 F. Supp. 2d 1063, 1067 (D. Or. 2009), *aff'd*, 638 F.3d 1234 (9th Cir. 2011). The district court found it significant that the student's application indicated that enrollment was precipitated by "inappropriate behavior, depression, opposition, drug use, runaway" and that "ADHD and trouble with school work" were not among the reasons listed." *Id.*

Here, the record supports the opposite conclusion. Dr. Nielsen, who in 2021 concluded that JHB met Nevada's requirements for emotional disturbance ("ED"), testified that JHB "needed the full-time mental health stabilization [at Elevations] to access her education." (AR 728.) During the after-the-fact IEP meetings in October 2021, the District agreed that JHB "needs an intensive therapeutic residential setting to ensure her safety and allow her to make progress to address concerns with mental health." (AR 1812.) The same symptoms that precipitated her enrollment at Elevations eventually led to the District's diagnosis of ED. And had the District not violated its child find obligations, it appears likely that JHB's diagnosis for ED would have been

13

1  explicitly indicated as a reason for her enrollment at Elevations.

2  In *Ashland* and *Edmonds*, the Ninth Circuit examined the details of the placement at issue to determine whether it was proper. In *Ashland*, the court affirmed the denial of reimbursement for a residential placement where "much of [the student's] time [at the residential treatment program] was dedicated to psychological care, not education." 587 F.3d at 1184. The program at issue provided "psychological care, intensive counseling, and educational support sessions." *Id.* at 1180.

In *Edmonds*, the court rejected similar arguments to those that the District is making in this case: arguments that the residential placement at issue was "predominantly a medical placement" and must be considered so because the student's mental health had "deteriorated to such a significant degree that he could only benefit from serious *medical* intervention." 80 F. App'x 495. The court explained that "[s]tudents who require residential placement to obtain an educational benefit are often experiencing some acute health crisis at the time they are placed—the severity of their condition is precisely why they need residential treatment." *Id.* In affirming the district court's conclusion that the placement was educational, the court looked to what the facility provided: it was "an accredited educational institution that has a full school day with regular classroom settings and testing; its instructors are [] employees and most are certified as special education teachers." *Id.* Although the student participated in daily group therapy sessions, they only lasted forty minutes, "far less than the six hours per day of intensive psychotherapy that the child in *Clovis* received." *Id.*

Elevations is more analogous to the placement at issue in *Edmonds* than in *Ashland*. Elevations is an accredited educational institution with small classroom settings, credentialed teachers, and a certified Special Education

14

teacher, which provides "college preparatory academics, therapeutic recreation activities, and individual, family and group psychotherapy." (AR 621, 2310–14.) At Elevations, JHB received 480 minutes per week in psychological services, which is comparable to the forty minutes per day (280 minutes per week) in *Edmonds*. (AR 2312.) And the schedule was comparable to that of a full-time school: JHB received 1,800 minutes (30 hours) per week in educational instruction at Elevations, substantially the same as what she received at Galena.[4] (ECF No. 80-2.) In contrast to the placement in *Ashland*, the majority of JHB's time at Galena was dedicated to education.

The District argues that the fact that Plaintiffs filed a complaint against their insurance company seeking coverage for Elevations supports a conclusion that the placement at Elevations was medical in nature. (ECF No. 81 at 12–13.) The Court grants the District's request to take judicial notice of Plaintiffs' First Amended Complaint ("FAC") in *Brazelton et al v. Rocky Mountain Hospital and Medical Services*, 2:24-cv-00994-GMN-BNW (ECF No. 59). The Court takes judicial notice of the existence of Plaintiffs' FAC but does not take judicial notice of the facts within the complaint or make any findings related to the allegations or claims. The complaint in that case does not assist the Court in its determination of whether Elevations was an appropriate placement from which student obtained an educational benefit.

---

[4] The Court takes judicial notice of the Galena Bell Schedule at ECF No. 80-2. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the web sites or the accuracy of the information displaced therein"); Fed. R. Evid. 201. According to the schedule, students receive 335 minutes of instruction on a regular day and 290 minutes of instruction on a Wednesday, which amounts to approximately 1630 minutes (27 hours) per week.

15

The Court finds that Elevations was an appropriate educational placement. Plaintiffs are awarded reimbursement in the amount of **$170,933.00**. (AR 2522–23; ECF No. 82-2 at 3.) The Court also awards reimbursement for the following related services: transportation costs in the amount of **$3,909.79**[5] and parent training in the amount of **$1,314.42**.[6] 34 C.F.R. § 300.34; (*see* ECF No. 82-2.)

### 5. Evidentiary Support

The District challenges the Plaintiffs' evidentiary support for reimbursements and points out some errors in calculations. (ECF No. 81 at 14–15.) Plaintiffs have adequately responded to those mathematical errors, and the Court used the updated figures when calculating reimbursement. (ECF No. 82 at 3 n.3.) The Court finds that it is appropriate to supplement the record with receipts for the few items that were not supported by the administrative record. (ECF No. 82-1.) *See Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993); *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Off. of Admin. Hearings*, 652 F.3d 999, 1005 (9th Cir. 2011) ("evidence that is non-cumulative, relevant, and otherwise admissible constitutes 'additional evidence' that the district court 'shall' consider pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii)").

### 6. Equitable Factors

The District argues that Parents' failure to provide the statutory ten-day notice of unilateral placement precludes reimbursement. 20 U.S.C. §

---

[5] This figure includes transportation for JHB from Menninger to Elevations ($1,896.19) (AR 2489–2521) and transportation for JHB from Elevations to Reno ($2,013.60) (AR 2556–63). The Court does not award the requested reimbursement of $11,524.63 for the cost of parent visits to JHB at Elevations. (ECF No. 82-2 at 6.)

[6] This figure includes the parent workshop for Dad at Elevations and related transportation costs ($408.00) (AR 2536–39) and the parent workshop for Mom at Elevations and related transportation costs ($906.42) (AR 2541–45). (ECF No. 82-2 at 6.)

16

1412(a)(1)(C)(iii); (ECF No. 81 at 15–16.) Plaintiffs argue that, because this is a child find case rather than an IEP case, they were not required to provide notice. (ECF No. 80 at 19.) The SRO found this factor relevant in deciding not to grant reimbursement but noted that this is a discretionary consideration. (AR 3489–90, 3490 n.101.)

When a disabled child is enrolled in a private school by her parents, reimbursement "may be reduced or denied" if, "(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of [that information]." 20 U.S.C. § 1412(a)(1)(C)(iii).

Because this is a child find case, and because all placements for which the Court awards reimbursement took place after the time of the child find violation, the Court finds that Plaintiffs' failure to provide notice does not preclude or reduce reimbursement.

The District also argues that the Court should reduce reimbursement based on unreasonable actions taken by Parents. (ECF No. 81 at 21–22.) The Court may reduce or deny reimbursement "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(1)(C)(iii).

The District points to JHB's father's statement that the IEP process is a "legal fiction"; Parents' efforts to enroll JHB in Galena after they filed the due process complaint and while she was living in Utah; and their efforts to obtain

17

reimbursement after being denied insurance coverage. (*Id.*) Plaintiffs argue that the equities favor Parents because, among other things, they informed the District of JHB's mental health issues early on; they worked to coordinate school work with JHB's teachers, including after her suicide attempt; they requested a meeting in January 2019 to discuss options and only withdrew JHB because of the lack of viable options suggested by the District; they conducted due diligence in selecting Elevations; they participated in the after-the-fact IEP process; and they made every effort to enable JHB to access her education. (ECF No. 80 at 16–18.)

Having reviewed the conduct of both parties, the Court finds that equity does not warrant a reduction in reimbursement. Although communication between the District and Parents clearly became strained, the record does not indicate that Parents' actions were unreasonable under the circumstances. The Court considered equitable factors in determining reimbursement for each placement, as discussed above, and does not find that any further reduction is necessary.

## II.   CONCLUSION

It is therefore ordered that Plaintiffs' motion for leave to file a motion to reinstate waived damages (ECF No. 53) is DENIED.

It is further ordered that Defendant's motion for judicial notice (ECF No. 59) is GRANTED.

It is further ordered that Plaintiffs' motion for leave to supplement the administrative record (ECF No. 67) is DENIED as moot.

It is further ordered that Plaintiff's motion to exceed the page limit (ECF No. 68) is DENIED.

It is further ordered that Defendant's motion to strike (ECF No. 73) is DENIED as moot.

It is further ordered that Plaintiff's motion for reimbursement (ECF No. 80) is GRANTED in part. Plaintiffs are awarded reimbursement in the amount of **$198,833.21**, consisting of $701.00 for BYU, $14,675.00 for the Menninger Clinic, $7,300.00 for Academic Answers, $170,933 for Elevations, $1,314.42 for parent training at Elevations, and $3,909.79 for transportation at Elevations.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED: June 6, 2025

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE